IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| | ) NO. 3:15-cr-00184 |
| v. | ) |
| | ) JUDGE RICHARDSON |
| | ) |
| LLOYD MONTGOMERY | ) |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant's Motion for Compassionate Release (Doc. No. 353, "Motion"),[1] whereby Defendant seeks a reduction of his 240-month sentence and immediate release from the custody of the Bureau of Prisons ("BOP"), pursuant to 18 U.S.C. § 3582(c)(1)(A)(i).[2] Like many other federal inmates in this district and around the country, Defendant claims that the ongoing COVID-19 pandemic, as applied to his specific situation (namely, his being 60 years old and his particular health profile), satisfies the requirement of "extraordinary and compelling reasons" necessary for this Court to grant "compassionate release" under Section 3582(c)(1)(A)(i), and that compassionate release is otherwise appropriate in his case. The Government has filed a response in opposition (Doc. No. 358, "Response"), arguing that Defendant has not shown the required "extraordinary and compelling reasons" for compassionate

---

[1] A motion under Section 3582(c)(1)(A) is actually a motion for a reduction in sentence, including but not limited to reductions that would result in the defendant-movant's immediate release. The grant of a motion for sentence *reduction* under Section 3582(c)(1)(A) would not necessarily result in the defendant's immediate *release*. *See United States v. Maumau*, No. 2:08-CR-00758-TC-11, 2020 WL 806121, at *8 (D. Utah Feb. 18, 2020) (quoting *United States v. Urkevich*, No. 8:03CR37, 2019 WL 6037391 at *4 (D. Neb. Nov. 14, 2019)). Nevertheless, such motions generally are known as ones for "compassionate release." *Id.* at n.2 ("In this order, the court uses the phrase 'compassionate release' and 'sentence modification' interchangeably, which is consistent with how other courts have used the terms."); *United States v. McDonald*, No. 94-CR-20256-1, 2020 WL 3166741, at *1 (W.D. Tenn. June 8, 2020). This reflects the fact they typically do seek immediate release rather than a mere reduction in sentence that would result in an earlier release someday but not immediately.

[2] Defendant is housed at Federal Correctional Institution (FCI) Talladega.

release or that he is not a danger to the safety of other persons, and that other applicable considerations strongly militate against compassionate release. Defendant has filed a reply (Doc. No. 74, "Reply") to the Response.

PROCEDURAL BACKGROUND

On October 28, 2015, Defendant was charged in all but two of the sixteen counts of an Indictment filed against him and three co-defendants. (Doc. No. 21). In these fourteen counts, Defendant was charged with: one count of conspiracy to distribute and to possess with intent to distribute oxymorphone and oxycodone, in violation of 21 U.S.C. § 846; eleven counts of distribution and possession with intent to distribute oxymorphone (and, as to one count, also oxycodone), in violation of 21 U.S.C. § 841(a)(1); and two counts of possession of a firearm subsequent to a felony conviction, in violation of 18 U.S.C. § 922(g)(1). Based on the Government's filing of an Information pursuant to 21 U.S.C. § 851 (Doc. No. 77), Defendant's statutory maximum term of incarceration was increased from twenty to thirty years on each of the twelve charges brought under Title 21.[3]

On August 3, 2016, Defendant pled guilty to each of the fourteen counts, without a plea agreement. On January 4, 2017, Defendant (and all three of his co-defendants) were sentenced. Defendant was sentenced to a total sentence of 240 months (240 months on each of the Title 21 counts, to run concurrent with one another and to 120 months of each of the two Title 18 counts). Thereafter, Defendant successfully appealed his sentence; the Sixth Circuit vacated the sentence and remanded to the district court due to the district court's failure to explain why it attributed to Defendant the number of pills it attributed to him for purposes of calculating his sentencing

---

[3] The statutory maximum on the two Title 18 counts (for violation of 18 U.S.C. § 922(g)(1)) was ten years. Notably, it was not enhanced above 120 months pursuant to the Armed Career Criminal Act, 18 U.S.C. § 924(e).

guideline range (under Chapter Two of the United States Sentencing Guidelines). *See United States v. Merriweather*, 728 F. App'x 498, 521–22 (6th Cir. 2018).[4] On remand, the district court again imposed a 240-month sentence. (Doc. No. 320). This time, the 240-month sentence was upheld on appeal. *See United States v. Montgomery*, 787 F. App'x 272 (6th Cir. 2019).[5]

It appears from Defendant's Presentence Investigation Report ("PSR") that he has been accruing credit on his sentence since October 1, 2015. (Doc. No. 297 at 3). To date, therefore, Defendant has served over four and a half years of his 20-year sentence. (Doc. No. 353 at 1). The Government represents that BOP's website states that Defendant is not due to be released until October 11, 2032, (Doc. No. 358 at 2), and the undersigned has confirmed the accuracy of this representation.

LEGAL STANDARDS FOR "COMPASSIONATE RELEASE"

Under 18 U.S.C. § 3582(c)(1)(A), as modified by the Section 603(b)(1) First Step Act of 2018, P.L. 115-391, 132 Stat. 5239,[6] the district court may under certain circumstances grant a defendant's motion for compassionate release if what the Court will call the "exhaustion

---

[4] The district court found that Defendant qualified as a career offender, and this finding was upheld by the Sixth Circuit. *See Merriweather*, 728 F. App'x at 523–24. Thus, Defendant's criminal history category (VI) was based upon the career offender guidelines of Chapter Four of the United States Sentencing Guidelines. However, based upon the number of pills attributed to Defendant by the district court, the offense level from the alternative guideline calculation under Chapter Two was higher than the offense level determined under the career offender guidelines and thus was the offense level used by the district court to determine Defendant's guideline range. (Doc. No. 295 at 27).

[5] The undersigned did not preside over any of these proceedings and was assigned to this case only in May 2020.

[6] That paragraph of Section 603 provides:

 (b) INCREASING THE USE AND TRANSPARENCY OF COMPASSIONATE
RELEASE.—Section 3582 of title 18, United States Code, is amended—
 (1) in subsection (c)(1)(A), in the matter preceding clause (i), by inserting after ''Bureau of Prisons,'' the following: ''or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier . . .''

requirements" have been satisfied—*i.e.*, "[either] the defendant has fully exhausted all administrative rights to appeal a failure of [BOP] to bring a motion [for compassionate release] on the defendant's behalf or [there has been a] lapse of 30 days since the receipt of such a request [for BOP to file such a motion] by the warden of the defendant's facility, whichever is earlier." Here, the Government concedes that Defendant has satisfied the exhaustion requirements, inasmuch as more than 30 days have elapsed since Defendant filed a request (the adequacy of which the Court does not contest) with the warden seeking compassionate release. (Doc. No. 358 at 1 n.1).

Once it properly can act on a motion brought under 18 U.S.C. § 3582(c)(1)(A), the district court can reduce a sentence under that provision (for any defendant younger than 70 years old)[7] only if it finds extraordinary and compelling reasons to do so. *See* 18 U.S.C. § 3582(c)(1)(A)(i). The defendant bears the burden of showing that "extraordinary and compelling reasons" exist to justify release under the statute. *United States v. Hayward*, No. CR 17-20515, 2020 WL 3265358, at *1 (E.D. Mich. June 17, 2020). And the Court does not write on a clean slate in considering what qualifies as "extraordinary and compelling reasons."

Congress tasked the Sentencing Commission with promulgating "general policy statements regarding . . . the appropriate use of . . . the sentence modification provisions set forth in [section] 3582(c) of title 18. . . ." 28 U.S.C. § 994(a)(2)(C). Congress directed the Sentencing Commission, in promulgating these policy statements, to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t). In response to these congressional instructions, the Sentencing Commission promulgated U.S.S.G. § 1B1.13, and its application note, which collectively comprise

---

[7] This subparagraph provides an alternative ground for relief for defendants who are at least 70 years of age. *See* 18 U.S.C. § 3582(c)(1)(A). It is inapplicable here, however, because Defendant is only 60.

the policy statement(s).

Practitioners of federal criminal law are accustomed to treating the Sentencing Commission's policy statements as advisory only (especially in the aftermath of *United States v. Booker*, 543 U.S. 220 (2005)). They are exactly that in the context of a defendant's original sentencing—but not in the context of a motion under Section 3582(c)(1)(A). In the latter context, they are by statute mandatory, inasmuch as Congress has prohibited courts from granting a sentencing reduction unless "such a reduction is consistent with applicable policy statements issued by" the Sentencing Commission. 18 U.S.C. § 3582(c)(1)(A).[8]

Together, U.S.S.G. § 1B1.13 and its application note do two things that are relevant here. First, they define, in Application Note 1, "extraordinary and compelling circumstances" to apply in (and only in) situations falling within one or more of five separate and particular categories, which the Court discusses below. *See* U.S.S.G. § 1B1.13 cmt. n.1(A)(i)-(ii), (B), (C) & (D).[9] Second, they prescribe additional requirements for obtaining a sentence reduction where the defendant does meet the threshold requirement of "extraordinary and compelling circumstances."[10] Specifically, for a defendant not yet 70 years old (such as Defendant), the court

---

[8] In *Booker*, the Supreme Court found unconstitutional (*i.e.*, violative of the Sixth Amendment) Congress's directive that the Sentencing Guidelines are generally what was referred to as "mandatory," meaning that sentence generally had to be imposed within the guideline range calculated using the Sentencing Guidelines. To say the least, this limited Congress's ability to make anything about the Sentencing Guidelines mandatory in the context of an original sentencing. But such limitations do not exists in the context of a motion for sentence reduction under Section 3582(c)(1)(A), wherein the Sixth Amendment concerns driving the *Booker* decision are entirely absent.

[9] The Application Note also contains various other instructions for considering whether extraordinary and compelling circumstances exist. Such instructions need not be discussed here, as they do not affect the Court's dispositive conclusion herein that Defendant has not established the existence of "extraordinary and compelling reasons."

[10] It is worth noting that these other requirements—being, after all, *requirements*—are mandatory. That is to say, a defendant is *not* eligible for compassionate release merely because there are "extraordinary and compelling reasons" within the meaning of Application Note 1.

may reduce a sentence if (1) extraordinary and compelling reasons warrant a reduction, *and* (2) the defendant is not a danger to the safety of any other person or to the community, *and* (3) the reduction is consistent with the policy statement. *See* U.S.S.G. § 1B1.13(1)(A), (2) and (3). The Application Note indicates the third requirement may be redundant of the first two, inasmuch as it states that "any reduction made . . . for the reasons set forth in subdivisions (1) and (2) [*i.e.*, U.S.S.G. § 1B1.13(1) & (2)] is consistent with this policy statement." *Id.* at n.5.[11]

If the court does find these (two or three depending on how one looks at it) requirements satisfied, the defendant has met the basic eligibility for compassionate release. But even then, the Court does not automatically or necessarily grant the motion for a reduction; instead, it *may*, after considering the factors set forth in 18 U.S.C. § 3553(a), reduce the term of imprisonment (and may impose a term of probation or supervised release that does not exceed the unserved portion of the original term of imprisonment). *See* 18 U.S.C. § 3582(c)(1)(A).

The (familiar) sentencing factors set forth in Section 3553(a) include:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed—
>     (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>     (B) to afford adequate deterrence to criminal conduct;
>     (C) to protect the public from further crimes of the defendant; and
>     (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;

---

[11] Like many redundancies, this one may seem odd due to its apparent unnecessariness. But it seems motivated by the valid desire to ensure that the Sentencing Commission's criteria for a sentencing reduction expressly both: (a) included the congressional requirement, discussed below, that any reduction be "consistent with applicable policy statements issued by" the Sentencing Commission; and (b) clarified that the required consistency involved nothing more than satisfaction of U.S.S.G. § 1B1.13(1) & (2).

(4) the kinds of sentence and the sentencing range established for—
    (A) the applicable category of offense committed by the applicable category of defendant as set forth in the . . .
        i) [United States Sentencing Guidelines, ("U.S.S.G.")]—
        ii) [in effect at the time of sentencing]

(5) any pertinent policy statement—
    A) issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code; and
    B) [and in effect at the time of sentencing]

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

Relevant to factor number (5), as discussed above, the Sentencing Commission has issued a binding policy statement regarding reduction of a term of imprisonment under Section 3582(c)(1)(A). *See* U.S.S.G. § 1B1.13. As further mentioned above, Application Note 1 to U.S.S.G. § 1B1.13 speaks to what constitutes "extraordinary and compelling reasons," identifying five categories of situations where such reasons may be found to exist. Two of the five involve the defendant's medical condition, *i.e.*: (i) the defendant is suffering from a terminal illness; or (ii) the defendant is suffering from a serious physical or medical condition, or serious functional or cognitive impairment, or deteriorating physical or mental health due to the ageing process, that substantially diminishes the defendant's ability to provide self-care within the environment of a correctional facility and from which he is not expected to recover. *See* U.S.S.G. § 1B1.13 cmt. n.1(A). The next two categories relate to defendants over 65 and defendants with particular grave family circumstances, respectively; they are not applicable to the instant Motion.

As for the last of the five categories (sometimes referred to as the "catchall" category) the Application Note describes it as encompassing the situation where, "*[a]s determined by the*

*Director of the Bureau of Prisons*, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." U.S.S.G. § 1B1.13 cmt. n.1(D) (emphasis added). The italicized language raises an issue that has divided the courts: does a district court have the authority to grant compassionate release under the catchall provision based on "other" extraordinary and compelling reasons—*i.e.*, extraordinary and compelling reasons existing in the defendant-movant's case that are not within the scope of U.S.S.G. § 1B1.13 Application Note 1(A), 1(B), or 1(C)—not advanced (or "determined," as the catchall provision puts it) by the Director of BOP? The undersigned previously has taken a position on this issue, answering the question in the negative. *See United States v. Medlin*, Case No. 3:09-cr-00204-1, Doc. No. 105 (M.D. Tenn. May 7, 2020). The question remains a debatable one, but the Court adheres to its prior ruling, holding that where (as here) the Director of BOP has not determined that any such "other" reasons exist in the defendant's case, compassionate release for that defendant can not be predicated on "other" extraordinary and compelling reasons under the catchall provision.

THE PARTIES' RESPECTIVE POSITIONS

In the Motion, Defendant relies on the extant COVID-19 pandemic, his age (60), and his medical history, namely alleged asthma and a fractured spinal cord suffered in 1992. Defendant claims that "[h]is medical condition and age puts him at high risk of serious complications from Covid-19." (Doc. No. 353 at 1). As a result, Defendant contends, he has shown extraordinary and compelling reasons by fitting within two of the five categories prescribed by Application Note 1. Primarily, Defendant asserts that he is suffering from a serious physical or medical condition, or serious functional or cognitive impairment, or deteriorating physical or mental health due to the ageing process, that substantially diminishes Defendant's ability to provide self-care within the

environment of a correctional facility and from which he is not expected to recover, thus falling within U.S.S.G. § 1B1.13 cmt. n.1(A)(ii). (*See id.* at 8-9). Defendant also asserts that his situation justifies relief under the catchall category prescribed by Application Note 1(D) because of "the especially high risk of Covid-19 complications" he faces. (*See id.* at 11).

The Government argues in response that the Defendant has failed to show extraordinary and compelling circumstances as required by U.S.S.G. § 1B1.13(1). (Doc. No. 358 at 9-13). In addition, the Government correctly notes that under U.S.S.G. § 1B1.13(2), "this Court must deny a sentence reduction unless it determines the defendant 'is not a danger to the safety of any other person or to the community.'" (*Id*. at 13-14). In the Government's view, this determination cannot be made as to Defendant. (*Id.* at 14-20). Even if such determination could be made, the Government suggests (albeit with little discussion regarding the Section 3553(a) factors except to the extent that they related to dangerousness), the Motion should be denied because the factors under Section 3553(a) weigh against granting the Motion. (*Id.* at 13).

## ANALYSIS

The stage is thus set for the Court to decide the Motion. The issues (to the extent they are appropriately reached) are, in sequence: (a) whether Defendant is eligible—or, more precisely, eligible to be further considered—for compassionate release due to the (alleged) existence of "extraordinary and compelling reasons"; and, if so (b) whether Defendant is eligible to be further considered for compassionate release due to the (alleged) absence of a danger to other persons or the community he would present if released; and, if so (c) whether, upon further consideration (*i.e.*, consideration of the factors set forth in 18 U.S.C. § 3553(a)), the Motion should be granted. As set forth below, the Court answers the first question in the negative, thus pretermitting the subsequent questions and mandating denial of the Motion.

### I. Extraordinary and compelling reasons

As indicated above, the Court first must determine whether "extraordinary and compelling reasons" exist for Defendant's compassionate release under the standards set forth by U.S.S.G. § 1B1.13 and its application note. Defendant bears the burden to show that extraordinary and compelling reasons exist warranting his release. *United States v. Shabudin*, No. 11-CR-00664-JSW-1, --- F. Supp. 3d ----, 2020 WL 2464751, at *3 (N.D. Cal. May 12, 2020); *United States v. Crouch*, No. 5:19-CR-00029-TBR, 2020 WL 1963781, at *3 (W.D. Ky. Apr. 23, 2020) ("[Defendant's] circumstances do not meet the burden of extraordinary and compelling.").

As further noted above, Defendant relies upon his age, his alleged asthma, and his fractured spinal cord. He claims that when these are considered in conjunction with the COVID-19 pandemic, they constitute extraordinary and compelling reasons for compassionate release. Such an assertion, as often is the case on motions for compassionate release, asks the Court to put itself in the difficult position of making medical assessments it is generally not qualified to make. On the other hand, in some such situations, the record reveals that the defendant has not met the burden he or she bears. This is just such a case. It is clear that Defendant has not shown that the personal characteristics on which he relies are associated with a materially enhanced risk from COVID-19.[12]

To support his allegation that he currently suffers from asthma, Defendant cites the PSR (which was prepared in 2016) for the proposition that he was diagnosed with asthma as a child, and had recently experienced trouble breathing, albeit without seeking treatment. (Doc. No. 353 at 4). And, the Government notes, the PSR also reflects Defendant's claim that he used an inhaler

---

[12] In referring to risk from COVID-19, the Court refers both to the risk of becoming infected with COVID-19 and the risk of having a bad outcome in the event of a COVID-19 infection.

until two or three years prior (*i.e.*, roughly 2013 or 2014). (Doc. No. 358 at 12). But as the Government correctly notes, the Probation Office could not verify Defendant's claim about asthma and breathing problems, and "the primary support for this claim appears to be [Defendant's] own representations." (*Id.* at 11). Moreover, the mere fact that one had asthma as a child does not mean that he or she still has it at age 60.[13] Additionally, the Court would be speculating that any actual breathing problems in 2016 would have stemmed from asthma (as opposed to, for example, a transient upper respiratory infection). And Defendant's use of an inhaler in 2013 or 2014 does not prove the existence of asthma in 2020, especially since such evidently was discontinued.

Defendant does point to new, much more recent use of an inhaler. (Doc. No. 353 at 4). Specifically, he cites BOP medical records that show that he was prescribed an Albuterol inhaler on April 15, 2020. (Doc. No. 355-1 at 5).[14] But the medical comments from that date state that Defendant "[d]enies any history of asthma" and provide the assessment not that Defendant is suffering from asthma, but rather that Defendant is suffering from a "[r]espiratory disorder, unspecified." (Doc. No. 355-1 at 5).[15]

---

[13] The Court reiterates here that it cannot claim medical expertise or qualifications of any sort. But it can say that it is beyond question that (many if not all of) those who can make such a claim note that childhood asthma does not always persist into adulthood. *See Will my child outgrow asthma?*, Mayo Clinic, https://www.mayoclinic.org/diseases-conditions/childhood-asthma/expert-answers/outgrow-asthma/faq-20058116 ("Asthma symptoms that start in childhood can disappear later in life.") (last visited July 2, 2020); *Can children outgrow asthma and/or allergies?*, Sharecare, https://www.sharecare.com/health/asthma-and-children/can-children-outgrow-asthma-allergies#:~:test=Children%20can%20outgrow%20asthma%2C%20particularly%20toddlers%20 with%20asthma,%E2%80%9Coutgrow%E2%80%9D%20their%20asthma%20by%206%20years%20of%20age ("Children can outgrow asthma, particularly toddlers with asthma that is triggered only by viral respiratory infections ('colds' or upper respiratory infections). Approximately 80 percent of toddlers with this form of asthma will 'outgrow' their asthma by 6 years of age.") (last visited July 2, 2020).

[14] The cited medical records (Doc. No. 355-1) were filed, and remain, under seal. The sealing shall be deemed lifted only to the extent that particular information therein has been referred to in this Order.

[15] BOP's records do reflect that the inhaler was prescribed for use "as needed to prevent/relieve asthma attack," (Doc. No. 355-1 at 6), but they do not opine that Defendant has asthma or indicate that Defendant was diagnosed as having asthma rather than merely an "unspecified" respiratory disorder.

Moreover, the Court does not see, and has not been shown, where there is any substantiation to Defendant's claims that he has recently suffered respiratory problems of any kind. By the time of this April 15, 2020 report, Defendant could[16] have had a substantial incentive to claim falsely (even if only subconsciously falsely) that he had breathing difficulties, as such could have supported a motion for compassionate release based on COVID-19. The Court's point is only that if an individual objectively has a specific incentive to make a particular claim, that tends to undercut the Court's ability to rely on the claim, especially when the claim is otherwise unverified; the Court does not accuse Defendant of actually fabricating a story about breathing difficulties.

And to Defendant's credit, there is reason to believe that he was being candid about his breathing issues, and not embellishing their cause or seriousness. This returns to him some of the credibility he inevitably lost (as would anyone) by having an incentive to report breathing difficulties. But his candor also undercuts his claim to have asthma. As noted, BOP medical records show that on April 15, he denied having asthma; he also reported having breathing problems only at night. (Doc. No. 355-1 at 5). On April 8, BOP medical records show that in the aftermath of fainting and falling in his cell, Defendant "denie[d] any known medical problems" and was at that time "on no medication."[17]

---

[16] That Defendant *could* have had such a motive is clear from the facts that by April 15, 2020, the link between certain respiratory problems and an increased risk from COVID-19 undeniably was well known; and (b) other inmates around the country had begun moving for compassionate release based upon their alleged increased risk from COVID-19, as in, for example, *United States v. Powell*, No. 1:94-CR-00316 (ESH), 2020 WL 1698194, at *1 (D.D.C. Mar. 28, 2020) (granting motion for compassionate release filed by a defendant who "is 55-years-old [and] suffers from several respiratory problems (including sleep apnea and asthma[.]"). The Court does not claim that Defendant *actually* had such a motive, because the Court cannot say whether Defendant had the knowledge of such facts from which to derive such a motive.

[17] Defendant refers for some reason to this incident briefly in the Motion, albeit with a date of April 4 rather than the April 8 date that appears to the undersigned to be the correct date. (Doc. No. 353 at 4). To the extent that Defendant meant to imply that this incident is indicative of Defendant having asthma (or even any respiratory issues), the Court rejects such implication as being entirely unsupported.

In short, the record does not suffice to satisfy Defendant's burden to show that he currently has asthma. Still less does the record show that he has "moderate to severe" asthma as opposed to mild asthma; this is important because, as the Government notes, the Centers for Disease Control and Prevention (CDC) describes "moderate-to-severe" asthma as increasing the risk from COVID-19. (Doc. No. 358 at 12). The Court believes, due to the constantly changing mix of information and opinions about COVID-19 from presumably informed sources, it important not to automatically accept carte blanche the opinion of any public health or medical authority, no matter how esteemed. But the CDC's view here is vital because it is Defendant himself who relies upon it. (*See* Doc. No. 353 at 9) ("According to the Center for Disease Control (CDC), people who have underlying conditions like asthma are especially vulnerable to and at higher risk for serious complications from Covid-19.").[18] And ultimately the CDC's opinion appears to be that at least moderate asthma is required. Even if Defendant had met his burden of showing that he currently suffers from asthma to some degree (which he has not), he has not shown that he currently suffers from moderate or severe, as opposed to mild, asthma.

With respect to Defendant's fractured spinal cord, the Government does not dispute that it exists or that it causes Defendant some pain. But Defendant simply makes no traction in connecting it to increased risk from COVID-19. Perhaps because he has little to work with in this regard, all he says (in either the Motion or the Reply) is that it "left him with persistent back pain." (Doc. No. 353 at 1). As the Government notes in its Response, without subsequent dispute from Defendant

---

[18] For its part, the Court is not wedded to limiting a defendant to pegging its argument solely to the CDC's views; the law does not require or even suggest such a limitation, and the Court would consider other views as to whether and to what extent the defendant's medical condition enhances the defendant's risk from COVID-19. As it happens, however, in the Court's experience defendants are like-minded with the Government, tending to refer only or primarily to the CDC's views when making their arguments that their conditions raise the kind of increased risk from COVID-19 that justifies compassionate release. Such is the case here. This is Defendant's choice (and by no means necessarily an imprudent one), and the Court will conduct its analysis accordingly.

in his Reply, "neither spinal cord injuries nor persistent back pain are the sorts of medical conditions which have been recognized by the CDC as possibly putting a person at higher risk for severe illness from COVID-19." (Doc. No. 358 at 12).

With respect to Defendant's age, the Court does not deny that a 60 year-old may be at greater risk of COVID-19 than younger persons. But by the same token they may be at lower risk than persons above age 60, which constitute a relatively small but still significant portion of the United States' general (and even prison) population. The most the Court can venture to say—and venture is the right word because the undersigned cannot purport to personally have expertise on this subject or vouch for the reliability of any particular opinions or studies on the subject—is that someone aged 60 may well be at somewhat higher risk on average and from a purely statistical standpoint. And this gets Defendant only so far, and not far enough to meet his burden. This is especially true since the kind of source on which Defendant needs to rely to make his statistical argument, the CDC, does not associate age 60 with exceptional risk. As the Government notes, again without dispute from Defendant, "only persons 65 years and older have been recognized by the CDC as possibly putting a person at higher risk for severe illness from COVID-19." (*Id.* at 13).

Individually or collectively, Defendant's age and asserted medical conditions fail to show that he is suffering from a serious physical or medical condition, serious functional or cognitive impairment, or deteriorating physical or mental health due to the ageing process, that substantially diminishes Defendant's ability to provide self-care within the environment of a correctional facility and from which he is not expected to recover. *See* U.S.S.G. § 1B1.13 cmt. n.1(A)(ii). Thus, he is relegated to relying on the catchall provision. Such reliance is fruitless, however, because in asserting the catchall provision, Defendant does not point to any additional circumstances that would constitute extraordinary and compelling circumstances. The best construction the Court can

put on Defendant's argument under the catchall provision is that he asserts that the catchall provision gives the Court more flexibility than does Application Note 1(A)(ii) to find extraordinary and compelling reasons based on a particular set of circumstances—in which case, perhaps Defendant's age and asserted medical conditions could satisfy the catchall provision even if they do not satisfy the more specific provisions of Application Note 1(A)(ii).

But the Court would not countenance this view of the catchall provision in this manner even if the Court could rely upon the catchall provision in the absence of its invocation by the Director of BOP—which the Court maintains is not the case as noted above. The catchall provision applies only to "*other* reasons," *i.e.* "extraordinary and compelling reasons *other* than, or in combination with, the reasons described in [*inter alia*, Application Note 1(A)(ii)]." U.S.S.G. §1B1.13 cmt. n.1(D) (emphasis added). Defendant has not advanced reasons other than those underlying Application Note 1(A)(ii), *i.e.*, his alleged chronic serious health conditions (or physical deterioration associated with ageing) that allegedly, because of COVID-19, prevent him from exercising self-care (including social distancing) in prison. Thus, the catchall provision does not justify relief in any event if it were cognizable by this Court in the present case.

Defendant thus fails to show the extraordinary and compelling reasons required for compassionate release.

## II. Danger to the safety of any other person or the community.

Even if he could show extraordinary and compelling reasons, Defendant could be eligible for compassionate release, such that the Court would then proceed to an analysis of the factors under 18 U.S.C. § 3553(a), only if he is not a danger to other persons or the community. *See* U.S.S.G. § 1B1.13. "[T]he defendant has the burden of proof on the issue of his lack of danger to others and the community." *See United States v. Rodriguez*, No. 3:95CR772, 2020 WL 3260711, at *1 (N.D. Ohio June 13, 2020). Because Defendant fails to qualify for compassionate release,

irrespective of whether he would pose a danger upon release, the Court will not address the Government's (certainly colorable) argument that he would pose such a danger.

### III. Section 3353(a) factors

Because Defendant fails to qualify for compassionate release, irrespective of how the Section 3553(a) factors apply to him, the Court will not address the Government's (certainly colorable) suggestion that they militate against compassionate release for Defendant.

### CONCLUSION

Compassionate release is an extraordinary remedy. *See, e.g., United States v. Rizzo*, No. CR 16-20732, 2020 WL 2092648, at *3 (E.D. Mich. May 1, 2020). Such remedy is unavailable here, given that Defendant has failed to show extraordinary and compelling reasons to justify it.

For these reasons, the Motion (Doc. No. 353) is **DENIED**.

*Eli Richardson*
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE